# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| ALEXZANDRIA COLLINS,<br><br>    Plaintiff,<br><br>    v.<br><br>LANDRY'S, INC.,<br><br>    Defendant. | Case No. 2:13-cv-01674-RFB-VCF<br><br>**ORDER** |

## I.    INTRODUCTION

This case is before the Court on Defendant Landry's Motion for Summary Judgment. ECF No. 43. Plaintiff Collins claims violations of her rights under Title VII and related Nevada law during her employment at SHe's night club. In her complaint, Plaintiff alleges a claim for hostile work environment, race-based discrimination, retaliation, and wrongful termination. ECF No. 1. For the reasons stated below, the Motion for Summary Judgment is denied.

## II.    BACKGROUND

Plaintiff filed her Complaint on July 18, 2012. ECF No. 1. Defendant filed an answer and counterclaim on September 26, 2012. ECF Nos. 9 and 10. Defendant submitted its Motion for Summary Judgment on May 18, 2015. The Court held a hearing on March 23, 2016. ECF No. 50. At the hearing, the Court denied Defendant's Motion. Id. The instant order elaborates the reasoning for denial of Defendant's Motion.

## III.    LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to

1  interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no
2  genuine dispute as to any material fact and the movant is entitled to judgment as a matter of
3  law." Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When
4  considering the propriety of summary judgment, the court views all facts and draws all
5  inferences in the light most favorable to the nonmoving party. Gonzalez v. City of Anaheim, 747
6  F.3d 789, 793 (9th Cir. 2014). If the movant has carried its burden, the non-moving party "must
7  do more than simply show that there is some metaphysical doubt as to the material facts . . . .
8  Where the record taken as a whole could not lead a rational trier of fact to find for the
9  nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007)
10 (alteration in original) (internal quotation marks omitted).

**IV.    DISCUSSION**

### A. Undisputed and Disputed Facts

The Court incorporates its discussion of the undisputed and disputed facts from its hearing on March 23, 2016. The Court discusses and elaborates these facts here.

### *i. Undisputed Facts*

The parties do not dispute that Plaintiff Alexzandria Collins is an African American woman. On or about December 17, 2012, Collins was hired as a cocktail waitress at "SHe" Nightclub. On or about December 29, 2012, Collins attended a mock dinner at SHe Restaurant. At that mock dinner, Collins met Justin Hensley, a customer development representative, for SHe Nightclub. Hensley made multiple comments to Collins regarding her race. For example, Hensley said to Ms. Collins: "I'm so excited to meet you. I've heard so much about you. You're our token black girl." Later that same night, Hensley told Collins that the owner of the Crystals mall "loves chocolate, and that I would be perfect for him because I'm exactly what he goes for."

On December 31, 2012, Hensley introduced Collins to a table as "the token black girl." Hensley then said "try to comprehend this like a nigger trying to read." Collins walked away from Hensley after this statement. Collins told Hensley the joke was offensive. Plaintiff told another cocktail waitress, Noelle Abraham, about Hensley's comments the next time she

reported for work.

On or about January 10, 2013, Collins received a text from Ms. Abraham, another cocktail waitress, stating that Collins's hours had been cut and that Ms. Abraham had been instructed to only schedule Plaintiff for a Sunday shift. That same day, Collins called Leah Benefiel, assistant general manager, regarding her shifts being cut. Collins also informed Ms. Benefiel about the comments Hensley made. Benefiel told Collins she would look into the allegation against Hensley. Benefiel reported Plaintiff's allegations to Shannon Dupont and Cory McCormick. After these conversations, Collins' shifts were cut.

On February 12, 2013, James Theobald, the director of operations for Defendant, met with Ms. Collins to terminate her employment at SHe Nightclub.

The nightclub closed on February 21, 2013.

### ii. Disputed Facts

The parties dispute whether Plaintiff was performing her job according to her employer's expectations; whether other employees with similar qualifications were treated more favorably; and whether Theobold was only aware of Collins's allegations against Hensley on the day he terminated her on February 12, 2013, or whether he knew about Collins's complaints on New Years Eve December 31, 2012.

## B. Discrimination under Title VII and Section 1981

### i. Legal Standard

"Claims of disparate treatment arising under Title VII and section 1981 are parallel because both require proof of intentional discrimination. The same standards are used to prove both claims, and facts sufficient to give rise to one are sufficient to give rise to the other." Lowe v. City of Monrovia, 775 F.2d 998, 1010 (9th Cir. 1985) amended, 784 F.2d 1407 (9th Cir. 1986) (internal citations omitted). "Under McDonnell Douglas, a plaintiff alleging disparate treatment under Title VII must first establish a prima facie case of discrimination. Specifically, the plaintiff must show that (1) he belongs to a protected class; (2) he was qualified for the position; (3) he was subject to an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably. The burden of production, but not persuasion, then

shifts to the employer to articulate some legitimate, nondiscriminatory reason for the challenged action. If the employer does so, the plaintiff must show that the articulated reason is pretextual 'either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" Chuang v. Univ. of California Davis, Bd. of Trustees, 225 F.3d 1115, 1123-24 (9th Cir. 2000) (internal citation omitted).

"An employee who alleges status-based discrimination under Title VII need not show that the causal link between injury and wrong is so close that the injury would not have occurred but for the act. So-called but-for causation is not the test. It suffices instead to show that the motive to discriminate was one of the employer's motives, even if the employer also had other, lawful motives that were causative in the employer's decision." Univ. of Texas Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2522-23 (2013).

"As a general matter, the plaintiff in an employment discrimination action need produce very little evidence in order to overcome an employer's motion for summary judgment. This is because the ultimate question is one that can only be resolved through a searching inquiry—one that is most appropriately conducted by a factfinder, upon a full record." Chuang, 225 F.3d at 1124 (internal quotations and citations omitted).

### ii. Discussion

#### 1. Prima Facie Case

First, Defendant argues Plaintiff cannot establish a prima facie case of discrimination because she cannot show that she was performing as expected, experienced adverse employment action, and that others were treated more favorably. The Court finds that Defendant's interpretation of Title VII's requirements in making out a prima facie case for discrimination is incorrect. Namely, the Plaintiff need not show she was "performing as expected," but rather that she was qualified for the position. Defendant's own cited authority explicitly states this. See Nicholson v. Hyannis Air Serv., Inc., 580 F.3d 1116, 1123 (9th Cir. 2009). Because Defendant does not argue that Plaintiff was not qualified for the position of a cocktail waitress, the Court considers whether Plaintiff shows the third and fourth elements of a discrimination claim:

1  whether Plaintiff experienced adverse employment action; and whether those similarly situated
2  were treated more favorably than Plaintiff.

3  Regarding the third factor, the Court rejects Defendant's argument that Plaintiff did not
4  suffer an adverse employment action, because Defendant concedes that Plaintiff was terminated
5  from her job. See Little v. Windermere Relocation, Inc., 301 F.3d 958, 970 (9th Cir. 2002) ("of
6  course, termination of employment is an adverse employment action."); Villiarimo v. Aloha
7  Island Air, Inc., 281 F.3d 1054, 1064 (9th Cir. 2002) ("certainly, Harvest has suffered an adverse
8  employment action: Aloha terminated him."). Therefore the Court rejects Defendant's argument
9  that Plaintiff has failed to make a prima facie showing of discrimination under the third factor.

10  Regarding the fourth factor, whether those similarly situated were treated more favorably
11  than Plaintiff, Defendant raises three arguments. First Defendant argues that because SHe
12  Nightclub was failing, it is difficult to determine how any similarly situated cocktail waitresses
13  were treated any differently. Second, Defendant argues that Plaintiff's scheduling was consistent
14  for the short period of time the nightclub was operating and her average hours did not differ
15  significantly from other cocktail waitresses. Third, nine days after Ms. Collins' termination of
16  employment, all remaining nightclub employees were terminated.

17  In response, Plaintiff argues that she was the only cocktail waitress terminated *prior* to
18  the nightclub closing, and therefore the other cocktail waitresses—persons similarly situated—
19  were treated more favorably, even if all employees were technically terminated nine days after
20  she was. Defendant does not dispute this. The Court agrees that, despite the nine day difference
21  between Plaintiff's termination and the termination of the remaining nightclub employees, the
22  fact that Plaintiff was fired before the nightclub closed and was the only cocktail waitress
23  terminated before the nightclub closed, establishes she was treated less favorably than those
24  similarly situated. Further, the reason for terminating the other nightclub employees is directly
25  related to the closing of the nightclub which, Plaintiff argues, was not the reason for her
26  termination. Therefore, the Court finds that Plaintiff has established a prima facie case as to
27  discrimination. The Court turns to the second step of the analysis, which is whether Defendant
28  has alleged a legitimate, nondiscriminatory reason for terminating Plaintiff's employment.

*2. Legitimate, Nondiscriminatory Basis for Dismissal or Pretext*

Defendant argues that it has a legitimate, nondiscriminatory reason for terminating Plaintiff's employment: Plaintiff's poor performance as a cocktail waitress, and Defendant's generally declining business. Therefore, the Court considers Plaintiff's argument that these alleged reasons are pretextual.

"[A] plaintiff can prove pretext in two ways:  (1) indirectly, by showing that the employer's proffered explanation is 'unworthy of credence' because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the employer." Chuang v. Univ. of California Davis, Bd. of Trustees, 225 F.3d 1115, 1127 (9th Cir. 2000).

Plaintiff offers three arguments as to why Defendant's reasons for terminating her are pretextual. First, she argues that there is no evidence that she was ever written up or warned about her job performance. For example, there is no evidence as to why her shifts were reduced, and Defendant's 30(b)(6) corporate representative admitted during her deposition that there are no written statements from Theobald to support the company's position. Second, Plaintiff argues that the investigation by Collins against Hensley was improper and that her complaint against him was the true motivating factor for her termination. Third, Plaintiff argues that even if Defendant had "mixed motives" in its decision to reduce Collins' shifts and terminate her, the question of causation should be submitted to a jury. See Nassar, 133 S. Ct. at 2538.

The Court finds that there remain issues of material fact precluding summary judgment on this issue. Namely, the Court finds that Plaintiff has established genuine issues of fact regarding whether or not the articulated reasons for termination were pretextual, or whether indeed Plaintiff's performance or the business's general decline were the true reasons for her termination. Further, the Court finds that this factual determination is more appropriately a question for the jury. This finding is supported by the fact that, "[a]s a general matter, the plaintiff in an employment discrimination action need produce very little evidence in order to overcome an employer's motion for summary judgment. This is because the ultimate question is one that can only be resolved through a searching inquiry—one that is most appropriately

conducted by a factfinder, upon a full record." Chuang v. Univ. of California Davis, Bd. of Trustees, 225 F.3d 1115, 1124 (9th Cir. 2000) (internal quotations and citations omitted). Therefore the Court DENIES Defendant's motion as to Plaintiff's discrimination claim. The Court turns to Plaintiff's next claim: hostile work environment.

### C. Hostile Work Environment

#### *i. Legal Standard*

To make a prima facie case of a hostile work environment based on race under Title VII, a person must show that: "(1) the defendants subjected her to verbal or physical conduct based on her race; (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment." Surrell v. Cal. Water Serv., 518 F.3d 1097, 1108 (9th Cir. 2008).

"In determining if an environment is so hostile as to violate Title VII, we consider whether, in light of 'all the circumstances,' the harassment is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" McGinest v. GTE Serv. Corp., 360 F.3d 1103, 1112-13 (9th Cir. 2004). "Simply causing an employee offense based on an isolated comment is not sufficient to create actionable harassment under Title VII. … It is enough 'if such hostile conduct pollutes the victim's workplace, making it more difficult for her to do her job, to take pride in her work, and to desire to stay on in her position.'" Id. at 1113. Of relevance here, "[i]t is beyond question that the use of the word 'nigger' is highly offensive and demeaning, evoking a history of racial violence, brutality, and subordination. This word is 'perhaps the most offensive and inflammatory racial slur in English, ... a word expressive of racial hatred and bigotry.' Perhaps no single act can more quickly alter the conditions of employment and create an abusive working environment than the use of an unambiguously racial epithet such as 'nigger' by a supervisor in the presence of his subordinates." Id. at 1116.

"An employer's liability for harassing conduct is evaluated differently when the harasser is a supervisor as opposed to a coworker. An employer is vicariously liable for a hostile environment created by a supervisor, although such liability is subject to an affirmative defense.

1  If, however, the harasser is merely a coworker, the plaintiff must prove that ... the employer
2  knew or should have known of the harassment but did not take adequate steps to address it."
3  McGinest v. GTE Serv. Corp., 360 F.3d 1103, 1119 (9th Cir. 2004) (internal quotations omitted).

### ii. Discussion

Defendant argues Plaintiff has failed to prove the third element of a hostile work environment claim. Specifically, Defendant argues that Hensley's alleged behavior fails to rise to the level of severe or pervasive. Defendant argues that the record shows that Plaintiff was not subjectively upset by the comments; that she was able to continue working directly after the statements were made; and the action was not repeated after Plaintiff asked him to stop. Plaintiff argues that Hensley's repeated racial comments, in particular, the statement "try to comprehend this like a nigger trying to read" rise to the level of severe and pervasive. Additionally, Plaintiff argues she complained to her supervisors, and that she was offended and embarrassed by Hensley's comments. The Court rejects the Defendant's arguments.

First, the Court finds that Hensley's repeated racially derogatory statements on multiple occasions in front of VIP guests and other employees—calling her a "token black girl," and remarking that "he loves the chocolate," and "try to comprehend this like a nigger trying to read," are severe and pervasive. See McGinest, 360 F.3d at 1112-13 ("[i]t is beyond question that the use of the word 'nigger' is highly offensive and demeaning, evoking a history of racial violence, brutality, and subordination. This word is 'perhaps the most offensive and inflammatory racial slur in English, ... a word expressive of racial hatred and bigotry.'"). Second, the Court finds that there is at least a dispute as to Plaintiff's taking subjective offense to these statements. See Opp'n, Ex. 1 at 61-63. Third, the Court finds that the nature of these comments altered the conditions of Plaintiff's employment at the nightclub; See Id. at 1112-13 ("Perhaps no single act can more quickly alter the conditions of employment and create an abusive working environment than the use of an unambiguously racial epithet such as 'nigger'"). The Court finds this to be true despite Defendant's argument that Hensley was not Plaintiff's direct supervisor; this is because Plaintiff reported Hensley's racial comments to her supervisors Alana Cooler, Noelle Kyleen, and Leah Benefield and nothing was done to correct Hensley's behavior. In fact,

1  Hensley was later promoted to VIP host supervisor. Opp'n, Ex. 1, 131, 141.Therefore the Court
2  DENIES summary judgment as to the hostile work environment claim.

### D.  Retaliation under Title VII and Wrongful Termination under Nevada law

#### *i.  Legal Standard under Title VII*

The elements of the prima facie case for a Section 1981 retaliation claim and a Title VII retaliation claim are the same. Surrell v. California Water Service Co., 518 F.3d 1097, 1108 (9th Cir. 2008). To prevail on his retaliation claims, Plaintiff must demonstrate:  (1) that he engaged in a protected activity; (2) that he suffered an adverse employment action; and (3) that there is a causal a causal link between the protected activity and the adverse employment action. Dawson v. Entek Intern, 630 F.3d 928, 936 (9th Cir. 2011).

But-for causation is required to satisfy the third prong. "This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." Univ. of Texas Southwestern Med. Ctr. V. Nassar, 133 S.Ct. 2517, 2533 (2013). In the Ninth Circuit, "[t]emporal proximity between protected activity and an adverse employment action can by itself constitute sufficient circumstantial evidence of retaliation in some cases." Stegall v. Citadel Broad. Co., 350 F.3d 1061, 1069 (9th Cir. 2003), as amended (Jan. 6, 2004) (internal citation and quotation omitted).

Protected activities under Title VII include opposing allegedly discriminatory acts by one's employer. Id.; 42 U.S.C. 2000e-3(a). They also include making informal complaints to one's supervisor. Ray v. Henderson, 217 F.3d 1234, 1240 n.3 (9th Cir. 2000). "When an employee protests the actions of a supervisor such opposition is a protected activity." Trent v. Valley Elec. Ass'n Inc., 41 F.3d 524, 526 (9th Cir. 1994).

Further, if an employee communicates to his employer a reasonable belief the employer has engaged in a form of employment discrimination, that communication constitutes opposition to the activity. Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn., 555 U.S. 271, 276 (2009).

Once the Plaintiff has met its burden of making out a prima facie case of retaliation, the burden shifts to the Defendant to articulate a legitimate, non-retaliatory reason for its action. See

1  Porter v. Cal. Dep't of Corr., 419 F.3d 885, 894 (9th Cir. 2005); see also McDonnell Douglas
2  Corp. v. Green, 411 U.S. 792, 802 (1973). Once the defendant has presented a purpose for the
3  action, the plaintiff bears the ultimate burden of providing evidence that the defendant's reason is
4  "merely a pretext for a retaliatory motive." See Porter, 419 F.3d at 894; McDonnell Douglas, 411
5  U.S. at 804. A plaintiff may demonstrate a defendant's reason is pretextual "either directly by
6  persuading the court that a discriminatory reason more likely motivated the employer or
7  indirectly by showing that the employer's proffered explanation is unworthy of credence."
8  Hernandez v. Spacelabs Med. Inc., 343 F.3d 1107, 1112 (9th Cir. 2003) (internal quotations and
9  citations omitted). "To make this showing of pretext, [a plaintiff] may rely on the evidence
10 proffered in support of his prima facie case. A factfinder may infer the ultimate fact of retaliation
11 without proof of a discriminatory reason if it rejects a proffered nondiscriminatory reason as
12 unbelievable." Id. (internal citations omitted).

### ii. Legal Standard under Nevada Law

14 "[R]etaliatory discharge by an employer stemming from the filing of a workmen's
15 compensation claim by an injured employee is actionable in tort." Hansen v. Harrah's, 675 P.2d
16 394, 397 (Nev. 1984). "To support a claim of tortious discharge, the evidence produced by the
17 employee must be concrete and establish outrageous conduct that violates public policy…An
18 employee's statements that are conjecture or speculation cannot support a claim of tortious
19 discharge." State v. Eighth Judicial Dist. Court ex rel. Cty. of Clark, 42 P.3d 233, 240-41 (Nev.
20 2002). "[R]ecovery for retaliatory discharge under state law may not be had upon a 'mixed
21 motives' theory; thus, a plaintiff must demonstrate that his protected conduct was the proximate
22 cause of his discharge… the use of the 'mixed motives' concept in the context of wrongful
23 termination cases would have the effect of undermining the Nevada legislature's intent in
24 creating the 'at-will' doctrine." Allum v. Valley Bank of Nevada, 970 P.2d 1062, 1066 (Nev.
25 1998) (emphasis in the original).

### *iii. Discussion*

Because the parties agree that the analysis for Plaintiff's fourth cause of action—wrongful termination under Nevada law—is similar to the retaliation discussion, the Court addresses both causes of action below.

Defendant argues that Plaintiff cannot establish the third element of a retaliation claim: that she cannot establish the causal link between Plaintiff's protected activity and her reduction in hours or termination. Specifically, Defendant argues Plaintiff has no direct evidence of retaliatory conduct, because her reduction in hours and termination were a result of the overall failing of SHE's business. However, the Plaintiff need not produce *direct* evidence of such a connection. Rather, she may rely on circumstantial evidence. See Stegall v. Citadel Broad. Co., 350 F.3d 1061, 1066 (9th Cir. 2003), as amended (Jan. 6, 2004) ("As in all civil cases, [plaintiff] can prosecute her case using either direct or circumstantial evidence tending to prove that [defendant] terminated her employment in retaliation for making complaints of gender discrimination."). Plaintiff argues she can establish the causal link between her complaint regarding Hensley's behavior and her reduction in work hours and termination by, at the least, the temporal proximity between her complaint and subsequent adverse employment actions. In this instance, Plaintiff's hours were cut and her position terminated just days and weeks, respectively, after she reported the incidents to her supervisors on January 10, 2013. She further argues that the fact that only her hours were reduced and that, of all the cocktail waitresses, only she was fired supports her argument.

Defendant also argues that Theobold, the person who fired Plaintiff, was not aware of Plaintiff's complaint prior to terminating her. Plaintiff argues that her complaint about Hensley were revealed to Theobold the day the comments were made, according to Cory McCormack, an independent contractor. Opp'n, Ex. 6 at 15. Defendant replies by arguing that the record does not clearly establish this. Having reviewed McCormack's deposition, the Court finds that a genuine issue of material fact exists as to whether Theobald knew about Plaintiff's complaints regarding Hensley's behavior. For example, McCormack testified to the following: "Q: Did you ever speak with James Theobald regarding the allegations concerning Mr. Hensley? A: Maybe. That night

- 11 -

[December 31] was -- I remember hearing about it, and I remember asking Justin [Hensley] if he said that, he said no, and then just kind of went on with the regular course of the night. You know, I don't think it was an issue that night." Opp'n, Ex. 6 at 24.

The Court finds that issues of material fact as to but-for causation between Plaintiff's complaints about Hensley and the subsequent adverse employment actions, reducing her work hours and her later termination, preclude summary judgment for the Defendant.

Therefore, the Court DENIES Defendant's motion as to Plaintiff's retaliation and wrongful termination claims regarding reduction in work hours and/or her termination.

## V. CONCLUSION

The Court therefore DENIES Defendant's Motion for Summary Judgment. ECF No. 43.

DATED August 16, 2016.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**